UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 13-60029-CIV-COHN/SELTZER

LAVETTA EUBANKS-GLADES,

Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,[1]

Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment [2] filed,

respectively, by Plaintiff Lavetta Eubanks-Glades ("Claimant") and by Defendant Carolyn

W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner").

On October 9, 2013, the motions were referred to United States Magistrate Judge Barry

S. Seltzer pursuant to Magistrate Rules 1(c) and (d), Local Rules of the United States

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although other circuits have found the summary judgment device inappropriate
for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d
1383, 1389 (D.C. Cir. 1977), the Eleventh Circuit has deemed it appropriate where the
district court has reviewed the record and based its judgment on a finding of substantial
evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1, 2 (5th Cir.
1981).

District Court for the Southern District of Florida (DE 23).

The cross-motions present the following general issues: whether there exists substantial evidence to support the determination by the Administrative Law Judge ("ALJ") that Claimant remains capable of performing her past relevant work and, therefore, is not entitled to Disability Insurance Benefits ("DIB"); and whether the ALJ applied the correct legal standards in arriving at her determination. The undersigned concludes that substantial evidence does support the ALJ's determination and that the ALJ did apply correct legal standards. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE 19) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 20, 21) be GRANTED, and that the Commissioner's decision be AFFIRMED.

## II.    PROCEDURAL HISTORY

On December 21, 2009, Claimant applied for DIB; she alleged disability as of October 16, 2009.[3] Tr. 143, 507. Claimant's DIB application was denied initially and upon reconsideration. Tr. 86-96. On June 24, 2011, Claimant appeared with counsel at an administrative hearing and testified to the ALJ; a vocational expert provided testimony at that same hearing. Tr. 41-62. On July 14, 2011, the ALJ issued her decision; she found that Claimant was not under a "disability" as defined in the Social Security Act at any time from the (October 16, 2009) alleged onset of disability through the date of the decision. Tr. 18-27. On November 2, 2012, the Appeals Council denied Claimant's request for

---

[3] Claimant had previously sought benefits, and her application was denied in October 2009. Tr. 43.

2

review. Tr. 1-6. Therefore, the ALJ's decision stands as the final decision of the Commissioner.

On January 4, 2013, Claimant filed a Complaint (DE 1), commencing the instant action, and on April 23, 2013, the Commissioner answered (DE 14). On June 24, 2013, Claimant filed Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law ("Claimant's Motion") (DE 19). On July 24, 2013, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment ("Commissioner's Motion") (DE 20, 21). On August 1, 2013, Claimant filed Plaintiff's Reply Brief ("Claimant's Reply") (DE 22). Finally, on October 9, 2013, the motions were referred to the undersigned Magistrate Judge for disposition (DE 23).

The matter is ripe for review.

III.   FACTS

The undersigned has reviewed the Statement of Facts contained within the Commissioner's Motion (DE 2O, 21) and finds that it fairly and accurately summarizes the relevant portions of the administrative record.[4]

### A.   Relevant Evidence After Plaintiff's Alleged Onset Date of Disability

#### 1.   Diagnostic and Laboratory Examinations

Plaintiff presented for several diagnostic and laboratory examinations during the relevant time period, the majority of which yielded normal results.

_____

[4] The undersigned has not edited the Commissioner's grammatical and punctuation errors, as they are not substantive and do not affect the analysis.

3

An examination on April 20, 2011 revealed mild lumbar spondylosis, but no fractures or other significant pathology (Tr. 789). An MRI of the lumbar spine on May 12, 2011 revealed no disc herniation throughout the lumbar spine, and only mild bulging annuli at L4-5 and L5-S1 without significant change when compared to the prior study (Tr. 746). Lastly, on May 25, 2011, another chest x-ray revealed no acute cardiopulmonary process (Tr. 794). An examination on the same day revealed gastritis, yet notes recommended nothing more than the conservative treatment of antacids; avoidance of factors that increase stomach acid such as cigarettes, caffeine, and emotional stress; and avoidance of substances that irritate the stomach, such as aspirin-coated products and alcohol (Tr. 792).

## 2. Medical Examiners

Plaintiff presented to psychologist Susan Bedrin, Psy.D., on December 7, 2009 with complaints of fibromyalgia and weekly migraines (Tr. 666-67). Dr. Bedrin reported that Plaintiff cancelled five appointments prior to attending her intake interview and never returned for the recommended treatment (Tr. 666). During the December appointment, Dr. Bedrin noted that Plaintiff had a stable mood, pleasant and cooperative behavior, and intact memory (Tr. 666). Dr. Bedrin diagnosed Plaintiff with pain disorder associated with psychological factors and assessed a global assessment of functioning (GAF) score of 62 (Tr. 667).[5]

Plaintiff presented to Michael Simpson, Ph.D., for evaluation on January 29, 2010 (Tr. 669-72). Dr. Simpson observed that Plaintiff drove herself to the appointment; was 5 feet, 2 inches

---

[5] The GAF scale is divided into ten ranges. The GAF rating reflects the individual's overall level of functioning at the time of the examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within the range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100. A GAF over 60 signifies mild symptoms of functioning. Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., text rev., Am. Psychiatric Ass'n 2000).

tall and weighed 207 pounds; and was reportedly diagnosed with fibromyalgia in 1998, along with headaches since she was a teenager (Tr. 669). Upon physical examination, Dr. Simpson indicated that Plaintiff had no problem with her ambulation, balance, or posture (Tr. 669). Although Dr. Simpson stated that Plaintiff has difficulty completing tasks due to her pain level, during a mental evaluation, she had steady and clear speech pronunciation; good memory; effective communication with others, accurate calculations of Serial 3s; and full orientation (Tr. 671-72). Plaintiff told Dr. Simpson that her daily activities included exercising, stretching, watching television, preparing meals, interacting with her children and helping them with homework, shopping, socializing with friends, walking, and driving (Tr. 670-71). Dr. Simpson diagnosed Plaintiff with major depressive disorder, single episode; adjustment disorder with anxiety; fibromyalgia; migraines; knee pain; and assessed a GAF score of 50 (Tr. 672).

Treatment notes from Sabiha Khan, M.D., on April 26, 2010, referred Plaintiff for pain management based upon a diagnosis of fibromyalgia (Tr. 695).

Plaintiff presented to Richard M. Linn, M.D., at the Orthopaedic Center of South Florida, P.A., on June 1, 2011 for examination (Tr. 749). Plaintiff complained of back pain radiating down her leg and stated that her legs went numb, causing a fall on March 18, 2011, resulting in an emergency room visit and medication (Tr. 749). Upon examination, Dr. Linn noted that Plaintiff moved stiffly and had limited range of motion in all planes, intact motor strength in the lower extremities, intact sensation, and her sensation was intact to light touch (Tr. 749). Although she had back pain with straight leg raises, Plaintiff had no leg or hip pain (Tr. 749). Dr. Linn's impression was lumbar strain and sciatica versus sacroiliitis (Tr. 749). Dr. Linn recommended initiation of physical therapy (Tr. 750).

### 3. State Agency Physicians

State agency physician Linda O'Neil, Ph.D., prepared both a Psychiatric Review Technique (PRT) assessment and an assessment of Plaintiff's mental ability to perform work-related activities on March 10, 2010 (Tr. 674-76). Dr. Neil indicated that Plaintiff was not significantly limited in 14 out of 20 mental work-related activities and only moderately limited in the

5

remaining six activities, including, but not limited to, the ability to remember, understand, and carry out detailed instructions and interact appropriately with the general public (Tr. 674-75).

State agency physician Anya Collins, M.D., prepared an assessment of Plaintiff's physical ability to perform work-related activities on March 15, 2010 (Tr. 87-94). Dr. Collins indicated that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and an pull an unlimited amount (Tr. 88). Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 89-91).

State agency physician Harry Beecham, M.D., prepared an assessment of Plaintiff's physical ability to perform work-related activities on June 28, 2010 (Tr. 721-28). Dr. Beecham indicated that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and pull an unlimited amount (Tr. 722). Similar to Dr. Collins, Dr. Beecham opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 723-25).

State agency psychiatrist Monica King, Psy.D., prepared a PRT assessment indicating that Plaintiff had a single moderate episode of major depressive disorder and her impairments were "not severe" (Tr. 732). Dr. King indicated that Plaintiff had no restrictions of activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration (Tr. 739).

## B.    Plaintiff's Testimony and Self-Reported Daily Activities

Plaintiff testified that she handled her personal care, made her bed, put away clothes, vacuumed, shopped, and socialized with others via telephone (Tr. 189, 192, 195, 199-202, 235). She also paid bills, counted change, handled a savings account, and used a checkbook/money order (Tr. 194, 202, 235).

## C.    Pertinent Vocational Expert Testimony

During a hearing on June 24, 2011, the ALJ asked the VE to identify Plaintiff's past relevant work (Tr. 58). The VE identified the jobs of: (1) a medical examiner at the light exertional level (DOT 079.362-010); (2) a data entry clerk at the sedentary level (DOT 203.582-054); and (3) a construction worker at the medium to heavy exertional level (DOT 869.664-014) (Tr. 58-59).

The ALJ posed a question of a hypothetical individual who was capable of performing light work (Tr. 59). In response, the VE testified that Plaintiff could perform her past relevant work as a medical assistant and a data entry clerk (Tr. 59).

The ALJ posed a question of a hypothetical individual who was limited to sedentary work, but involving simple, routine, repetitive tasks, with limited changes and limited interpersonal interactions (Tr. 59). Although the VE testified that Plaintiff would be precluded from her past relevant work, she could perform several jobs that exist in the national economy such as (1) a surveillance system monitor at the sedentary exertional level (DOT 379.367-010) (1,500 jobs in the local economy, 20,000 jobs in the regional economy, and 271,000 jobs in the national economy); (2) a telephone information clerk at the sedentary exertional level (DOT 237.367-046) (1,500 jobs in the local economy, 15,000 jobs in the regional economy, and 250,000 jobs in the national economy); and (3) a food and beverage order clerk at the sedentary exertional level (DOT 209.567-014) (2,000 jobs in the local economy, 20,000 jobs in the regional economy, and 300,000 jobs in the national economy) (Tr. 60).

Commissioner's Motion at 3-7 (DE 20, 21).

## IV.    STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that

a reasonable person would accept as adequate to support the challenged conclusion.
Richardson, 402 U.S. at 401; Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).
The court may not "decide the facts anew, reweigh the evidence, or substitute [its]
judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to
determining whether the Commissioner's factual findings are supported by substantial
evidence, the court must determine whether the ALJ properly applied the correct legal
standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.    ANALYSIS

      A.    The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than 12
> months.

42 U.S.C. § 423(d)(1)(A). In determining the merits of a claim for benefits, the court must
consider the evidence as a whole, including: (1) objective medical facts or clinical findings;
(2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as
testified to by the claimant and corroborated by other witnesses; and (4) the claimant's age,
education, and work history. Walden, 672 F.2d at 839.

       To arrive at a determination as to disability, the ALJ must undertake  the  sequential
evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first
determine whether the claimant is presently engaged in substantial gainful employment.
20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made. Id.

       If the claimant is not engaged in such work, then the ALJ must proceed to the

8

second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If no severe impairment is found, the ALJ will conclude that there is no disability; if at least one severe impairment is found, the ALJ will proceed to the next phase of the analysis. See id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix I of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. Id. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all the relevant evidence," including medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the RFC to the demands of the previous employment to determine whether the claimant is still capable of performing that type of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(e).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id. These shifting

9

burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy.  20 C.F.R. § 404.1520(g)(1).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  See 20 C.F.R. § 404, Subpt. P, App. 2.  The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569.  The Guidelines are composed of detailed grids and rules which, based on a claimant's RFC, age, education, and previous work experience, direct a finding of disabled or not disabled.  See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of the rule."  20 C.F.R. § 404.1569.  The Guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis."  Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).  Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments.  Id.; Walker, 826 F.2d at 1003.  When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of RFC.  Hargis, 945 F.2d at 1490.  In such instances, the Commissioner must instead carry her burden through the use of a vocational expert.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Wingo v. Bowen, 852 F.2d 827, 831 n.4 (5th Cir. 1988);

10

Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B.    Application of the Sequential Evaluation by the ALJ

After considering all of the evidence, the ALJ concluded that Claimant remains capable of performing her past relevant work and, therefore, is not disabled under the Social Security Act. Tr. 23-24. In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[6]

The ALJ first found that Claimant has not engaged in substantial gainful activity since October 16, 2009, the alleged onset date. Tr. 20. The ALJ next found that Claimant has the following severe impairments: fibromyalgia, migraines, lumbar strain, and sciatica. Tr. 20. But the ALJ also found that Claimant's "mental impairments of depression and pain disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic work activities and are therefore nonsevere." Tr. 20. The ALJ then found that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 23.

The ALJ proceeded to assess Claimant's RFC. The ALJ found that Claimant can "perform light work as defined in 20 CFR 404.1567(b) except she can occasionally stoop, balance, kneel, crouch, crawl and climb ramps/stairs.    She can never climb

---

[6] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2012. Tr. 18, 20. Accordingly, "[C]laimant must establish disability on or before [December 31, 2012] in order to be entitled to a period of disability and disability insurance benefits." Tr. 18.

ladders/ropes/scaffolds." Tr. 23. In arriving at this RFC finding, the ALJ considered

Claimant's subjective complaints but found that they are not fully credible. Tr. 24. The ALJ

elaborated:

> The claimant testified that her medication made her sleepy and
> drowsy; however, she has never complained to her treating
> physician about her medication making her drowsy. She
> complained about pain when sitting, but it was reported that
> the claimant had no signs of discomfort and was sitting calmly
> [citation omitted]. She complained of back pain, but her
> findings on MRI of the lumbar spine were mild. The claimant
> also has never sought psychiatric treatment for her alleged
> mental impairments. The undersigned [ALJ] acknowledges the
> existence of some impairments, however, these impairments
> and the claimant's records indicate that they do not prevent her
> from the performance of work at the above residual functional
> capacity.

Tr. 26.

Finally, after measuring Claimant's RFC against the requirements of her previous

work, the ALJ found that Claimant remains "capable of performing past relevant work as

a medical assistant and data entry," both "as actually and generally performed." Tr. 26-27.

The ALJ noted the hearing testimony of the vocational expert, who stated that Claimant's

past work as a medical assistant requires light exertion and her work in data entry requires

sedentary exertion, and she noted the Dictionary of Occupational Titles, Volumes I and II,

Fourth Edition, Revised 1991, Sections 079.362-010 and 203.664-014. Tr. 26-27.

Because Claimant's RFC satisfies the demands of her past work she remains capable of

returning to those jobs. Tr. 27.

Having found that Claimant is able to perform her past work, the ALJ then found that

she has not been under a disability from the October 16, 2009 alleged onset date through

the date of the decision. The ALJ, therefore, concluded that Claimant is not entitled to DIB.

Tr. 27.

## C.    Discussion

In Claimant's Motion, she advances three arguments for a remand. First, she argues that the Commissioner erred by failing to consider the impact of her obesity in her RFC assessment. See Claimant's Motion at 19-21 (DE 19). Second, she argues that the ALJ erred in finding that her mental impairment is not severe. See id. at 21-25. And third, she argues that the ALJ's RFC is incomplete because she failed to complete a proper function-by-function analysis. See id. at 25-26.   For the reasons set forth below, the undersigned does not find Claimant's arguments persuasive.

### 1.    Consideration of Claimant's Obesity

Claimant faults the ALJ for failing to consider the effects of her obesity. According to Claimant, "[T]he ALJ failed to identify obesity as a severe impairment, and secondly, committed error by failing to assess how Claimant's obesity would impact her work related abilities on a function by function basis." Id. at 21. Claimant cites records of examinations showing that Claimant is 62 inches tall and has weighed between 197 and 207 pounds, which equates to a BMI between 35 and 37.9. See id. at 20 (citing Tr. 669, 749). She also notes that obesity can lead to chronic diseases of the cardiovascular, respiratory, and musculoskeletal systems. See id. Claimant concludes: "Given this direct medical evidence pertaining to the impact of Claimant's obesity, the ALJ's lack of attention to this important and severe impairment is unreasonable and illegal." Id. at 21 (emphasis added). The undersigned, however, is not persuaded.

Preliminarily, the undersigned notes that the examination records cited by Claimant do not contain any diagnosis of obesity. Tr. 669, 749. And even if those records were to

13

contain a diagnosis of obesity, such a diagnosis alone would not render the obesity a severe impairment. Social Security Ruling 02-01p makes clear that "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." SSR 02-01p, 2000 WL 628049, at *4 (SSA).

More importantly, beyond citing her weight and BMI and noting the health risks commonly associated with obesity, Claimant alleges no facts and identifies no record evidence that might support the notion that obesity significantly limits her ability to work. No treating or examining physician placed limitations on Claimant due to her obesity. And Claimant herself never even suggested—in her application or in her hearing testimony[7]— that obesity limited her ability to work. The ALJ in this case was under no obligation to "scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant." East v. Barnhart, 197 F. App'x. 899, 902 (11th Cir. 2006); see Warren v. Astrue, No. 1:09-CV-1408-TWT-ECS, 2010 WL 3294186, at *9 (N.D. Ga. July 14, 2010) (finding that "an ALJ need not consider an impairment when a claimant did not list the impairment in his application for SSI benefits, nor did he testify at his hearing that he suffered from those impairments or present any evidence to the ALJ that would have put him on notice of a limitation in the claimant's ability to function") (internal quotations omitted). Indeed, even after arguing in her Motion that the ALJ erred with respect to her obesity, Claimant fails to identify any evidence of the obesity's limiting effects; nor does Claimant explain how her weight erodes the occupational base for light work, let alone sedentary work. Claimant's

[7] Although Claimant's counsel elicited testimony from Claimant at the administrative hearing, neither counsel nor Claimant once raised the topic of obesity. Tr. 46-56.

14

failure is critical, for in disability analyses, it is not merely the presence of an impairment, but its limiting effect that determines its severity. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); see also 20 C.F.R. § 404.1520 (finding an impairment not to be severe if it does not significantly limit Claimant's physical or mental ability to do basic work). And the burden of making this showing rests with Claimant – not with the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

In sum, the ALJ did not err with respect to her consideration of Claimant's obesity. Claimant did not identify any limitation resulting from her obesity, and the record does not contain any evidence showing that the obesity was severe or that it further reduced her already-reduced capacity for light (and, by implication, sedentary) work. See James v. Barnhart, 177 Fed. Appx. 875, 878 n.2 (11th Cir. 2007) (finding no error where there was no medical evidence from which the ALJ could have concluded that claimant's obesity was a severe impairment); Ingram v. Astrue, No. 8:07-CV-1591, 2008 WL 2943287, at *7 (M.D. Fla. July 30, 2008) (holding that ALJ's failure to address plaintiff's obesity did not warrant remand because "no physician suggested that Plaintiff's obesity imposed any additional work-related limitations and Plaintiff did not allege any limitation in function as a result of his obesity in his application for benefits or during the hearing").

      2.    Severity of Mental Impairments

The ALJ found that "[C]laimant's medically determinable mental impairments of depression and pain disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." Tr. 20. Claimant, however, contends that this finding is not

supported by substantial evidence. See Claimant's Motion at 21-22 (DE 19) ("The ALJ argues [that her] mental condition of depression caused no more than a minimal impact of the ability to work. [citation omitted]. Substantial evidence from the record suggests otherwise."). The undersigned does not agree.

In disability determinations, the burden is on the claimant to show that her impairments are "severe," as that term is defined under the law. See McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). Although a claimant's burden is not high, neither is it a "toothless standard." Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007). The Code of Federal Regulations defines a severe impairment as one that "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such as understanding, performing and remembering simple instructions, using judgment, responding appropriately to usual work situations, and dealing with changes in a routine work environment. See 20 C.F.R. § 404.1521(b).

The Code of Federal Regulations provides even more detailed guidance for an ALJ who assesses the severity of a claimant's mental impairment. The Code directs the ALJ to consider the four areas of function listed in 20 C.F.R. § 404.1520a(c)(3): (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. Tr. 19. When rating the degree of limitation in the first three areas of function, the ALJ must employ a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). When rating the degree of limitation in the fourth area of function, the ALJ must employ a four-point scale: "[n]one, one or two, three, and four or more." Id. According to the Regulations, if the degrees of limitation in

16

the first three areas of function are found to be "none" or "mild," and if the degree of limitation in the fourth area of function is found to be "none," the ALJ will "generally conclude" that the mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ set forth in considerable detail her reasons for finding that Claimant's mental impairments are not severe. In her decision, the ALJ reviewed and explained the weight she accorded the opinions of the following psychologists: Dr. Susan Bedrin, to whom Claimant had been referred (prior to her filing date) for treatment relating to her pain complaints; Dr. Michael Simpson, to whom Claimant had been sent for a consultative examination (after her filing date); Dr. Linda O'Neil, a state agency psychological consultant; and Dr. Monica King, a state agency psychological consultant.

More specifically, the ALJ gave "great weight" to the findings of Dr. Bedrin, as they were generally supported by the other record evidence. Tr. 21, 22. Dr. Bedrin reported that Claimant's mood was stable, her behavior pleasant and cooperative, and her remote memory intact. Tr. 666. Dr. Bedrin found Claimant had a GAF score of 62, signifying only mild symptoms. Tr. 667. The ALJ also gave "great weight" to the assessment of Dr. King. Tr. 22. Dr. King had prepared a psychiatric review assessment indicating that Claimant had a single moderate episode of major depressive disorder and that her impairments were "not severe." Tr. 732. Dr. King found that Claimant had no restrictions of activities of daily living, only mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. Tr. 739. The ALJ elaborated upon Dr. King's findings:

17

> In support of her conclusion [that Claimant's psychiatric impairment is "not severe"], she noted that at the consultative examination on January 29, 2010, claimant stated that she could not work because her pain medication was not effective. [citation omitted]. She had no psychological medication. Her activities of daily living included cooking, caring for children, driving and shopping with assistance. She reported that she had task completing problems due to her pain. She was oriented to place and person, but not purpose of visit. Her immediate memory was below average. Dr. King noted that claimant had been referred to Dr. Bedrin for treatment for her chronic pain from fibromyalgia, but <u>missed five visits and then never returned for treatment</u>. She noted that claimant was able to shop, manage money, drive and perform household chores, and was limited primarily by her pain, rather than psychiatric symptoms.[8] Dr. King summarized that the claimant did not have severe mental health concerns.

Tr. 22 (emphasis added).

Although the ALJ elected not to accord "great weight" to the opinion of Dr. Simpson, the consultative psychologist, she nonetheless discussed his findings, including a GAF score of 50, and his diagnosis of a pain disorder and a major depressive disorder, single episode, moderate. Tr. 22. Dr. Simpson had also found that Claimant had steady and clear speech pronunciation, good memory, effective communication with others, accurate calculations of Serial 3s, and full orientation. Tr. 671-72. And although the ALJ elected to accord "little weight" to the opinion of a state agency psychologist, Dr. O'Neil, the ALJ nonetheless set forth Dr. O'Neil's opinion that Claimant was capable of simple non-production tasks, had a limited ability to deal with extensive interpersonal demands and with stress, and could relate on a basic level in a fairly low demand setting. Tr. 22. The

---

[8] At the hearing, Claimant explained that she was depressed because her physical impairments prevented her from doing things with her children and visiting her granddaughter. Tr. 53.

ALJ, however, found that Dr. O'Neil's opinion was not supported by other record evidence.[9] Tr. 22. The ALJ also noted that Dr. O'Neil had not taken into account Claimant's failure to pursue any psychiatric treatment or to utilize medication. Tr. 22.

The ALJ also considered and rated the degree of Claimant's limitation in each of the four broad functional areas for evaluating the severity of mental disorders. The undersigned notes that in each area the rating of the ALJ was consistent with that of Dr. King. As concerns the first functional area, activities of daily living, Claimant had no limitation. Tr. 21. The ALJ explained that Claimant had stated in her function report that she had no problem with her personal care, aside from doing her hair; she could shop, pay bills, count change, use a checkbook, and she enjoyed watching television, landscaping, remodeling, reading, music, and traveling. With respect to the second area, social functioning, Claimant had a mild limitation, as she reported she did not spend time and had difficulty getting along with others. Tr. 21. With respect to the third functional area, concentration, persistence, and pace, Claimant had no limitation; Claimant had reported that she followed written and spoken directions. Tr. 21. The fourth functional area is episodes of decompensation; Claimant had no episodes of extended duration. Tr. 21. The record does not show any psychiatric hospitalizations for an extended duration after the alleged onset date. Tr. 21. Because Claimant's medically determinable mental impairments cause no more than a "mild" limitation in any of the first three functional areas and "no" episodes of decompensation of extended duration in the fourth area, the mental

---

[9] The undersigned notes that Dr. O'Neil had found that Claimant was not significantly limited in 14 out of 20 mental work-related activities and was only moderately limited in the remaining six activities. Tr. 674-75.

impairments were properly deemed to be nonsevere. See 20 CFR § 404.1520a(d)(1). Claimant did not sustain her burden of showing that her depression and pain disorder significantly limit her ability to perform basic work activities. To the contrary, substantial record evidence supports the ALJ's finding that those mental impairments do not significantly limit Claimant's ability to perform basic work activities.

Furthermore, even if the ALJ had erred in finding that Claimant's depression and pain disorder were nonsevere, such an error would have been harmless. At step two, the ALJ did find that Claimant has at least one "severe" impairment; indeed, the ALJ found four "severe" impairments. The finding of at least one severe impairment is all that is required to proceed to the next step in the sequential analysis. See 20 C.F.R. § 404.1520(c) (stating that if claimant does not have a severe impairment, ALJ will find that claimant is not disabled); see also Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (stating that "the finding of any severe impairment" satisfies step two) (emphasis added). Accordingly, no remand would be required simply for the ALJ to find at step two that, in addition to the four recognized severe impairments, Claimant's depression and pain disorder are also severe. A remand based on an ALJ's allegedly deficient (step two) severity assessment would be warranted only if the ALJ had failed to consider all of a claimant's impairments, whether severe or not, in her (step four) RFC assessment. See SSR 96-8p, 1996 WL 374184, at*5 (S.S.A. July 2, 1996) (stating that "[i]n assessing RFC [at step 4], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'") (emphasis added); see also Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (ALJ's failure to find that claimant's cervical condition was severe could not constitute reversible error because

20

ALJ could properly consider that condition in determining whether claimant had a sufficient RFC to allow him to work); Masch v. Barnhart, 406 F. Supp. 2d 1038, 1054 (E.D. Wisc. 2005) (noting that "if the ALJ fulfills this obligation at step four [of considering all severe and non-severe impairments in assessing RFC], any error at step two will likely be harmless").

Here, in arriving at her (step four) RFC determination, the ALJ not only made clear that she had given "careful consideration [to] the entire record," Tr. 23 (emphasis added), but she also specifically noted at step four that Claimant "never sought psychiatric treatment for her alleged mental impairments." Tr. 26. In the ALJ's view, Claimant's failure to seek psychiatric treatment clearly undermined her contention that she was limited by her mental impairments. Indeed, the ALJ expressly cited Dr. O'Neil's failure to account for Claimant's lack of psychiatric treatment as a basis for discounting her opinion. In addition, at step four the ALJ referenced Dr. Goldberg's finding that Claimant was alert and cooperative and that she appeared fully cognizant. Tr. 24. And she noted that although Claimant complained about pain when sitting, "it was reported that the claimant had no signs of discomfort and was sitting calmly." Tr. 26. The ALJ concluded that although Claimant does have some impairments, they do not prevent her from performing work at the reduced light (and, by implication, sedentary) exertional level.[10] Tr. 26.

___

[10] The undersigned notes that even if Claimant were more limited than the ALJ had found, that is, even if she had an exertional capacity for only sedentary work and, further, were limited by virtue of her mental impairments to simple routine, repetitive tasks, with limited changes and limited interpersonal interactions, the vocational expert made plain that Claimant could still perform several other jobs. Tr. 59-60. The vocational expert offered some examples of such jobs: surveillance system monitor, telephone information clerk, and food and beverage order clerk. Tr. 59-60.

In sum, after conducting a thorough review of the record, the ALJ properly found that Claimant's mental impairments are "nonsevere." Because the ALJ's finding is supported by such evidence that a reasonable mind would accept as adequate, it should not be disturbed. Yet, even if the ALJ had erred in this (step two) finding, such error would have been harmless, as she considered Claimant's mental impairments as part of her (step four) RFC assessment.[11]

### 3.    Function-by-Function Analysis

Claimant argues that the ALJ's RFC is incomplete because she "failed to complete a proper function-by-function analysis." Claimant's Motion at 25 (DE 19). The undersigned notes that Social Security Ruling 96-8P requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A.). The undersigned, however, does not agree that the ALJ's RFC is incomplete.

Although Claimant is correct in noting that the ALJ must assess her work-related abilities on a function-by-function basis, she is not correct in suggesting that the ALJ did

---

[11] The undersigned notes that Claimant has not argued that additional functional limitations were necessary in the RFC to accommodate her mental limitations, notwithstanding that she bears the burden of proving the functional limitations for her alleged impairments. See Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) ("We reiterate that RFC is determined at step four, where the burden of proof rests with the claimant"). Nor has she demonstrated that her mental impairment caused any functional limitations. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work).

not do so. The ALJ stated that she undertook "careful consideration of the entire record" in assessing Claimant's RFC and "f[ound] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally stoop, balance, kneel, crouch, crawl and climb ramps/stairs. She can never climb ladders/ropes/scaffolds." Tr. 23. Significantly, the Regulations define "light work" as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). By expressly referencing the definitional regulations, the ALJ made clear that she had considered Claimant's abilities and found her capable of preforming each of the functions set forth therein.

Moreover, while SSR 96-8p requires consideration of all evidence, it does not require that the ALJ expressly address each functional ability in her decision. See Freeman v. Barnhart, 220 Fed. Appx. 957 (11th Cir. 2007) (explaining that complying with SSR 96-8p's function-by-function requirement does not require the ALJ to be specific or explicit in his findings for the RFC assessment so long as he considers all of the evidence and whether it supports the level of disability claimed); see also Allen v. Astrue, No. 09-00496-B, 2010 WL 1658811, at *7 (S.D. Ala. Apr. 21, 2010) ("The fact that the ALJ did not expressly address each functional ability, such as the ability to sit, stand, walk, push

or pull, or other functional capabilities is of no moment where the record clearly demonstrates that the ALJ considered all of the evidence."); Gully v. Astrue, No. 1:08cv245-WC, 2009 WL 1580416, at *4 (M.D. Ala. June 3, 2009) ("[W]here the ALJ has considered all available relevant evidence pertaining to the claimant's functional limitations, the failure to specifically and explicitly discuss the ALJ's assessment of the claimant's work-related abilities on a function-by-function basis does not require reversal.") (internal quotations omitted).

Here, it is clear that the ALJ did carefully consider all of the evidence in the record, including the hearing testimony and the medical evidence, and she addressed both in her decision. Although Claimant suggests that the ALJ was required to expand further on her specific functional findings, the ALJ's detailed discussion of Claimant's diagnostic tests and physical examinations, consultative examination, state agency reviews, and hearing testimony, coupled with her finding that Claimant could perform a modified range of light work, fully complies with SSR 96-8p and the case law. As one appellate court observed, "there is no particular language or format that an ALJ must use in his or her analysis as long as there is sufficient development of the record and explanation of findings to permit meaningful judicial review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). The undersigned concludes that the ALJ here sufficiently developed the record and explained her findings to permit meaningful judicial review.

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned does not find Claimant's arguments persuasive. The ALJ did not err in her consideration of Claimant's obesity or in her assessment of Claimant's mental impairments. Furthermore, the ALJ adequately complied

24

with Social Security Ruling 96-8P in arriving at her RFC findings. The undersigned, therefore, respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE 19) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 20, 21) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this ___ day of November 2013.

BARRY S. SELTZER
Chief United States Magistrate Judge

25

Copies to:

Honorable James I. Cohn
United States District Judge

All counsel of record